# IN THE SUPREME COURT OF IOWA

No. 11–1714

Filed March 15, 2013

**DAVID TAFT,**

Plaintiff,

vs.

**IOWA DISTRICT COURT FOR LINN COUNTY,**

Defendant.

---

Certiorari to the Iowa District Court for Linn County, Stephen B. Jackson, Jr., Judge.

The district court held that a civilly committed sex offender was not entitled to a final hearing to determine his eligibility for discharge or transitional release. Sex offender filed a petition for a writ of certiorari. **WRIT ANNULLED.**

Philip B. Mears of Mears Law Office, Iowa City, for plaintiff.

Thomas J. Miller, Attorney General, and John B. McCormally, Assistant Attorney General, for defendant.

**HECHT, Justice.**

A person detained by the State as a sexually violent predator sought a final hearing on his request for discharge or for placement in a transitional release program. In this petition for writ of certiorari, we are asked to decide whether the district court erred in denying the request for a final hearing. We annul the writ.

## I. Background Facts and Proceedings.

Taft was arrested in December 1987 for lascivious acts with a minor, based on allegations that he sexually molested his sister and committed other criminal sexual offenses. He was convicted and sentenced to two five-year terms and a two-year term to run concurrently. He served this sentence and was discharged on May 31, 1991.

Seven days after his discharge from prison, Taft reoffended by sexually assaulting two girls who were unknown to him—one who was eight years old and the other who was ten. He was arrested and charged with second-degree sexual abuse, assault causing injury, and burglary. He was convicted and sentenced to prison. Taft was discharged from prison for these offenses on January 10, 2005.

Proceedings were commenced for Taft's commitment as a sexually violent predator (SVP) pursuant to the Commitment of Sexually Violent Predators Act, Iowa Code chapter 229A on March 30, 2005. At the commitment trial, the State's expert opined that Taft suffered from mixed personality disorder (anti-social personality disorder) and pedophilia. A jury found Taft suffered from a mental abnormality which made it more likely than not that he would reoffend, and he was therefore committed to the Civil Commitment Unit for Sexual Offenders (CCUSO) under the provisions of Iowa Code chapter 229A.

The State filed a notice of annual review for 2010 and a report submitted by staff at the CCUSO.  *See* Iowa Code § 229A.8(2), (3) (2011)[1] (requiring annual examination of committed person's mental abnormality and report to the court).  The report expressed the conclusion that Taft's mental abnormality persisted and he remained unfit for discharge or transitional release.  Taft thereafter submitted a petition seeking a final hearing on whether he should be discharged from the CCUSO or placed in its transitional release program.  *See id.* § 229A.8(4).

In May 2011, before the district court had ruled on Taft's 2010 petition, the State submitted its notice of annual review for 2011.  This notice included a report prepared by the CCUSO staff asserting there was as of that time "no evidence of any change in Mr. Taft's mental abnormality" constituting a ground for his discharge.  This assertion as to the persistence of Taft's mental abnormality was based in part on the result of an assessment that the staff interpreted as "clinically significant for sexual interest in minors."  The staff report further alleged six major disciplinary reports issued to Taft in the preceding six months disqualified him from eligibility for the transitional discharge program.  The six disciplinary reports cited Taft for two instances of lying to staff, two instances of inciting disruptiveness, one instance of disrespecting the CCUSO staff, and one boundary violation.

Taft filed a petition requesting a final hearing on his 2011 annual review and his claims for either outright discharge or placement in the transitional release program.  As Taft's request for a final hearing on the 2010 annual review had not yet been adjudicated, it was consolidated with the 2011 proceedings by agreement of the parties.  Taft supported

---

[1]All references are to the 2011 Code unless otherwise indicated.

his prayer for relief with a report prepared by Dr. Craig Rypma, a licensed clinical psychologist. Dr. Rypma's report, based on his review of the reports generated by the CCUSO staff and a clinical evaluation, suggested Taft was no longer more likely than not to reoffend if discharged and recommended that Taft at least be placed in a transitional release program. In addition to Dr. Rypma's report, Taft submitted in support of his request for a hearing several exhibits including the major discipline reports he received at the CCUSO facility during 2010 and 2011.

After weighing the evidence presented by the parties, the district court concluded Taft had failed to produce a preponderance of relevant and reliable evidence tending to prove a final hearing should be held to determine whether Taft's mental abnormality had so changed that he was no longer likely, if discharged, to engage in predatory acts constituting sexually violent offenses. The court further concluded Taft had failed to produce a preponderance of relevant and reliable evidence tending to prove a hearing should be held to determine whether he was suitable for placement in the CCUSO's transitional release program.

Taft filed an application for writ of certiorari with this court, claiming the district court applied an incorrect legal standard in weighing the expert reports presented at the annual review hearing. Additionally, he contends section 229A.8A(2)(*e*) as applied in this case violated his right to due process by disqualifying him from placement in the transitional release program as a consequence of the disciplinary reports issued for infractions that did not involve sexual misconduct. *See id.* § 229A.8A(2)(*e*) (listing a major disciplinary report within six months of the annual report as one of many grounds for denying placement in transitional release program).

## II. Standard of Review.

We review certiorari actions for correction of errors at law. *State Pub. Defender v. Iowa Dist. Ct.*, 745 N.W.2d 738, 739 (Iowa 2008). We "examine only the jurisdiction of the district court and the legality of its actions." *Christensen v. Iowa Dist. Ct.*, 578 N.W.2d 675, 678 (Iowa 1998). "Illegality exists when the court's factual findings lack substantial evidentiary support, or when the court has not properly applied the law." *Id.*

## III. Discussion.

**A. Procedural Background of Annual Review Process.** Iowa Code chapter 229A entitled "Commitment of Sexually Violent Predators," was enacted by the general assembly in 1998. 1998 Iowa Acts ch. 1171 (codified at Iowa Code ch. 229A (1999)). Legislative findings expressed in the first section of the statute noted the existence of "a small but extremely dangerous group of sexually violent predators" who need "very long-term" specialized treatment that is unavailable in other settings. Iowa Code § 229A.1. We have acknowledged that Iowa Code chapter 229A allows for the commitment of SVPs in order " 'to protect the public, to respect the needs of the victims of sexually violent offenses, and to encourage full, meaningful participation of sexually violent predators in treatment programs.' " *Johnson v. Iowa Dist. Ct.*, 756 N.W.2d 845, 847 (Iowa 2008) (quoting Iowa Code § 229A.1 (2007)).

Recognizing that civil commitment proceedings must comport with the Due Process Clause, the general assembly established a protocol for periodic reviews of the status of each committed person. *Id.* at 848 (citing Iowa Code § 229A.8). The protocol includes an annual examination of a committed person's mental abnormality. Iowa Code § 229A.8(2). A report of the results of each annual examination must be

submitted to the court that ordered the committed person's commitment. *Id.* § 229A.8(3). A committed person may present evidence including expert opinions for the court's consideration in the annual review. *Id.* § 229A.8(2).[2] The committed person may, as part of the annual review procedure, petition the court for discharge or placement in a transitional release program. *Id.* § 229A.8(4).

The court's annual review of the committed person's status may be based "only on written records." *Id.* § 229A.8(3). If requested by either the attorney general or the committed person, the court may schedule a hearing on the annual review and receive arguments from counsel for the parties. *Id.* § 229A.8(5)(*d*). This hearing may also be "conducted in writing without any attorneys present." *Id.*

**B. Legal Standard for Annual Review Decisions.** Chapter 229A raises a rebuttable presumption in favor of extending a civil commitment. *Id.* § 229A.8(1). This presumption may be rebutted at the annual review stage

> *when facts exist to warrant a hearing* to determine whether a committed person no longer suffers from a mental abnormality which makes the person likely to engage in predatory acts constituting sexually violent offenses if discharged, or the committed person is suitable for placement in a transitional release program.

*Id.* § 229A.8(1) (emphasis added). The committed person can rebut the presumption at the annual review stage by producing a preponderance of evidence that facts exist to warrant a further hearing referred to in the

---

[2]The committed person "may retain, or if the person is indigent and so requests, the court may appoint a qualified expert or professional person" to conduct an examination and review "all records concerning the person." Iowa Code § 229A.8(2).

statute as a "final hearing." *Id.* § 229A.8(5)(*e*)(1).[3] We now turn to the questions of what the committed person must prove at the annual review stage in order to satisfy this burden and what analytical framework is required under the statute for determining whether a final hearing is "warranted." *Id.* § 229A.8(3) ("The court shall conduct an annual review and, if warranted, set a final hearing . . . .").

We recently were called upon in *Johnson* to interpret an earlier version of section 229A.8, which entitled a committed person to a final hearing upon production of " '*competent evidence* which would lead a reasonable person to believe a final hearing should be held.' " *Johnson*, 756 N.W.2d at 848 (quoting Iowa Code § 229A.8(5)(*e*) (2007) (emphasis added)). We reasoned that "competent evidence" as used in that earlier version of the statute meant *admissible* evidence, not necessarily evidence more persuasive than evidence controverting it. *Id.* at 851 n.4 (citing *Black's Law Dictionary* 596 (8th ed. 2004)). Explaining the district court's role at the annual review stage in evaluating the evidence and deciding whether a final hearing should be held, we noted that our

> interpretation of the statute d[id] not foreclose the district court from evaluating *the evidence presented by the committed person* to determine whether the evidence could support a reasonable doubt finding and whether a reasonable person would conclude that this evidence, if believed, could lead to release. *It d[id] not, however, permit*

---

[3] A "final hearing"—if granted—is on the merits of whether the committed person is entitled to discharge or placement in the transitional release program. *See* Iowa Code § 229A.8(5)(*e*)(2) (requiring a final hearing on the committed person's entitlement to discharge or placement in transitional release program within sixty days after the district court orders a final hearing be held). The State bears the burden to prove beyond a reasonable doubt at the final hearing either that the committed person's mental abnormality remains such that the person is likely to engage in predatory acts that constitute sexually violent offenses if discharged or is not suitable for placement in a transitional release program. *Id.* § 229A.8(6)(*d*). A jury trial may be demanded by the committed person or by the State. *Id.* § 229A.8(6)(*a*), (*c*).

*the district court to conduct a mini-hearing on the issue of whether the committed person still suffer[ed] from a mental abnormality.*

*Id.* at 850–51 (emphasis added).

We concluded in *Johnson* that the version of section 229A.8 in effect at that time did not authorize the district court to weigh the evidence and decide at the annual review stage whether the committed person had proved by a preponderance of the evidence his eligibility for either discharge or placement in the transitional release program if a final hearing were held. *Id.* at 850. We reasoned that the legislature did not intend to condition the committed person's entitlement to a final hearing on proof that he would prevail if such a hearing were held. *Id.* Thus, we articulated in *Johnson* the following standard for determining at the annual review stage whether the committed person is entitled to a final hearing:

> *[I]f the committed person presents admissible evidence that could lead a fact finder to find reasonable doubt* on the issue of whether his mental abnormality has changed such that he is unlikely to engage in sexually violent offenses, then the committed person should be granted a final hearing.

*Id.* at 850 (emphasis added).

Shortly after our ruling in *Johnson*, the legislature amended section 229A.8(5)(*e*). *See* 2009 Iowa Acts ch. 116, § 1. Section 229A.8(5)(*e*) as amended reads as follows:

> *e.* (1) *The court shall consider all evidence presented by both parties at the annual review.* The burden is on the committed person to prove by a preponderance of the evidence that there is *relevant and reliable* evidence to rebut the presumption of continued commitment, which would lead a reasonable person to believe a final hearing should be held to determine either of the following:
>
> (*a*) The mental abnormality of the committed person has so changed that the person is not likely to engage in

predatory acts constituting sexually violent offenses if discharged.

(*b*) The committed person is suitable for placement in a transitional release program pursuant to section 229A.8A.

Iowa Code 229A.8(5)(*e*) (2011) (emphasis added).

**C. The Arguments of the Parties.** Taft contends the general assembly's 2009 amendment of section 229A.8(5)(*e*) did not significantly change the legal standard controlling a committed person's entitlement to a final hearing. According to Taft, the committed person's burden after the amendment—just as before—is to show by a preponderance of the evidence that a reasonable person would believe a final hearing should be held. The standard for evaluating the evidence at the annual review stage was not significantly changed, Taft posits, by either (1) the new directive that the district court "shall consider all of the evidence presented by both parties at the annual review" or (2) the substitution of "relevant and reliable evidence" in place of the former "competent evidence." *See* 2009 Iowa Acts ch. 116, § 1.

Now, in Taft's view, a committed person must prove by a preponderance that—just as before the 2009 amendment— "a reasonable person would think . . . there might be doubt as to whether" the committed person's mental abnormality persists to a point that he remains likely to reoffend if released or as to whether he is a suitable candidate for the transitional release program. If such doubt exists, Taft argues, a reasonable person would believe a final hearing is warranted at which the State bears the burden of proof beyond a reasonable doubt of the grounds for the committed person's continued commitment. Thus, Taft asserts the new requirement that the district court shall consider all of the evidence presented in making these decisions at the annual review

stage affects what evidence must be considered by the court when deciding the issues, but not the legal standard utilized in deciding them.

Likewise, Taft argues, the amendment's substitution of the requirement that evidence be "relevant" rather than "competent" signals no intent to change significantly the court's analytical framework as both terms merely refer to evidence that is admissible. And although Taft advances no explanation of the general assembly's intended meaning for the word "reliable" in the 2009 amendment, he asserts the term does not demonstrate legislative intent to require that the court weigh the relative credibility of the parties' evidence at the annual review stage in deciding whether a final hearing should be held. In sum, Taft contends the 2009 amendment did not substantially change either the committed person's burden of proof or the court's analytical framework for evaluating whether a final hearing is warranted at the annual review stage.

In Taft's view, the analytical framework prescribed by the statute, as amended, for deciding whether a committed person is entitled to a hearing, is similar to the one courts commonly apply in deciding motions for summary judgment. In deciding whether a fact question exists for trial at the summary judgment stage, the court does not weigh the admissible evidence tending to prove a fact against the admissible evidence opposing it in deciding whether a genuine issue of fact exists for trial. *See, e.g.*, *Butler v. Hoover Nature Trail, Inc.*, 530 N.W.2d 85, 88 (Iowa Ct. App. 1994). Similarly, inferences raised from the admissible evidence tending to prove or disprove a fact are not weighed against each other at the summary judgment stage, but instead are weighed against "the abstract standard of reasonableness, casting aside those which do not meet the test and concentrating on those which do." *Id.* Analogizing to these summary judgment principles, Taft describes the analytical

framework mandated by our decision in *Johnson* and the statute as amended as follows: After reviewing all of the evidence submitted at the annual review stage, could a reasonable person find by a preponderance of the evidence that doubt exists as to (1) whether the committed person's mental abnormality still makes it likely that he will reoffend if released or (2) whether the committed person is suitable for the transitional release program? A committed person satisfies this burden and is entitled to a hearing, Taft posits, if the evidence presented at the annual review could lead a reasonable person to believe "a committed person could come close to showing doubt on either of the two factors." Under this interpretation of section 229A.8(5)(*e*)(1) favored by Taft, a report from a qualified expert supporting the committed person's position on either of these two propositions would entitle the person to a final hearing on the merits.[4]

The district court erred, Taft argues, in denying the request for a final hearing on the ground that Dr. Rypma's report was not reliable when weighed against the State's evidence. Simply put, Taft contends the district court—by weighing the competing opinions of the experts one against the other—and finding the State's experts' opinions more persuasive than those of Dr. Rypma—engaged in the type of mini-trial on the nature and extent of his continuing dangerousness prohibited by *Johnson* and not countenanced by the general assembly in its 2009 amendment of section 229A.8(5)(*e*)(1).

---

[4]Taft concedes the statutory requirement that evidence be reliable authorizes the district court as gatekeeper to "discount evidence that is not credible on its face" or that is "directly contradicted by objective and undisputed evidence." However, he contends that "if a qualified expert's report supports the committed person's release, that person should get a final hearing."

The State urges a different view of the proper interpretation of the statute. As the 2009 amendment was adopted soon after our decision in *Johnson*, the State contends it was intended to effect "a substantial shift in the court's role" at the annual hearing stage. The State contends the close temporal relationship between our decision in *Johnson* and the general assembly's amendment of the statute should lead us to conclude the amendment was prompted by a belief that our interpretation of section 229A.8(5) in *Johnson* set the bar too low for committed persons seeking a final hearing. 756 N.W.2d at 851. Pointing specifically to the amendment's addition of the requirement that the presumption of continued commitment be rebutted by "relevant and reliable evidence," the State perceives a legislative intent to set a significantly "higher hurdle for the committed person desiring a final hearing" than existed under our holding in *Johnson*. Under the interpretation of the statute favored by the State, the district court functions as a gatekeeper weighing the opinions of opposing experts and denying a request for a final hearing upon a finding that the committed person's evidence supporting discharge or transitional release is less persuasive than the State's evidence opposing it.

In the State's view, if the district court finds the opinions of the State's expert(s) more persuasive than the opinions of the committed person's expert(s), the court may reject the latter as unreliable and conclude the committed person is not entitled to a final hearing. Contending the district court properly engaged in a proper weighing of the competing expert opinions in this case and properly found Dr. Rypma's opinions less persuasive and reliable than those of the State's experts, the State urges this court to conclude the district court properly interpreted and applied the statute as amended.

**D. Interpretation of Section 229A.8(5)(*e*) as Amended.**
Ambiguity may appear in a statute as a consequence of either the particular words chosen by the legislature or the general scope and meaning of the statute when all of its provisions are examined. *Carolan v. Hill*, 553 N.W.2d 882, 887 (Iowa 1996). We conclude section 229A.8(5)(*e*)(1) as amended is ambiguous because the plain language of the statute leaves room for more than one reasonable interpretation of the district court's role at the annual review stage. Although both before and after the 2009 amendment the burden to prove an entitlement to a final hearing by a preponderance of the evidence has been allocated to the committed person, the precise contours of what must be proved to "lead a reasonable person to believe a final hearing should be held" is unclear and subject to more than one reasonable interpretation. Iowa Code § 229A.8(5)(*e*)(1).

In *Johnson*, we held a final hearing must be held if "the committed person presents admissible evidence that could lead a fact finder to find reasonable doubt on the issue of whether [the committed person's] mental abnormality has changed such that he is unlikely to engage in sexually violent offenses." 756 N.W.2d at 851. The arguments of the parties require us to answer several questions. Did the general assembly intend by its 2009 amendment to nullify or substantially modify our holding in *Johnson*? Does the amendment authorize the district court to weigh the competing evidence at the annual review stage and determine whether the committed person has proved by a preponderance of the evidence that he is not likely to reoffend if discharged or that he is suitable for placement in the transitional release program? Alternatively, did the general assembly intend by its 2009 amendment that the committed person must prove as a condition of obtaining a final hearing

it is more likely than not that a fact finder, having reviewed all of the relevant and reliable evidence presented at the annual review stage, could find a fact question remains as to whether the committed person remains likely to reoffend if discharged or as to whether he is more likely than not suitable for placement in the transitional release program?

When confronted with ambiguity, we may consider among other factors:

> "(1) the object sought to be attained, (2) the circumstances under which the statute was enacted, (3) the legislative history, (4) the common law or former statutory provisions, including laws upon the same or similar subjects, (5) the consequences of a particular construction, (6) the administrative construction of the statute, [and] (7) the preamble or statement of policy."

*Carolan*, 553 N.W.2d at 887 (quoting Iowa Code § 4.6).

When a statute is amended soon after controversy has arisen as to the meaning of ambiguous terms in an enactment, the court has reason to believe the legislature intended the amendment to provide clarification of such terms. *Bob Zimmerman Ford, Inc. v. Midwest Auto. I., L.L.C.*, 679 N.W.2d 606, 610 (Iowa 2004). "Where the language is of doubtful meaning, or where an adherence to the strict letter would lead . . . to absurdity, or to contradictory provisions, the duty of ascertaining the true meaning devolves upon the court." *Case v. Olson*, 234 Iowa 869, 872, 14 N.W.2d 717, 719 (1944); *accord* 2A Norman J. Singer & J.D. Shambie Singer, *Statutes & Statutory Construction* § 45:12, at 101 (7th ed. 2007). " 'Among the most venerable of the canons of statutory construction is the one stating that a statute should be given a sensible, practical, workable, and logical construction.' " *Walthart v. Bd. of Dirs. of Edgewood-Colesburg Cmty. Sch. Dist.*, 667 N.W.2d 873, 877–78 (Iowa

2003) (quoting *Van Baale v. City of Des Moines*, 550 N.W.2d 153, 155 (Iowa 1996)).

With these principles in mind, we turn to the interpretation of section 229A.8(5)(*e*)(1) as amended. We conclude the general assembly did not intend by its 2009 amendment to require a mini-trial on the evidence presented at the annual review on the questions that would be decided at a final hearing, if granted. As we suggested in *Johnson*, it would be illogical to require a committed person to prove by a preponderance at the annual review stage that he will win on the merits at a final hearing at which the State must prove the converse beyond a reasonable doubt. 756 N.W.2d at 850 (stating "[i]t would be illogical . . . to interpret section 229A.8(5)(*e*) to require the committed person to disprove the State's final-hearing case in order to obtain a final hearing").

Although we conclude the general assembly did not intend by the 2009 amendment to require a mini-trial at the annual review stage on the merits of the issues to be presented in any requested final hearing, we believe the amendment changed two aspects of the court's analysis. First, the district court must consider all of the evidence in deciding whether the committed person has satisfied the burden of proof. This change was, we believe, in response to our conclusion in *Johnson* that the determination of whether the committed person was entitled to a final hearing was limited to the question of whether "*the committed person present[ed] admissible evidence* that could lead a fact finder to find reasonable doubt on the issue of whether his mental abnormality has changed." 756 N.W.2d at 851 (emphasis added). The 2009 amendment clarified that the court must not limit its inquiry to evidence submitted by the committed person. The amendment also clarified that not all admissible evidence presented in support of a request for a final

hearing will count in the determination of whether the presumption in favor of continuing the commitment has been rebutted. Only "reliable" evidence will count. Thus, we conclude the amendment did not change either the allocation to the committed person of the burden (proof by a preponderance of the evidence) or the legal standard (whether a reasonable person would be led by the evidence to believe a final hearing should be held) controlling whether entitlement to a final hearing has been demonstrated. The amendment did, however, enhance the level of scrutiny applied by the district court in making the decision on a request for a final hearing. The court must now consider all of the evidence presented and in deciding whether the committed person has met his burden, weigh only evidence that is reliable.

Thus, under section 229A.8(5)(*e*)(1), a committed person is entitled to a final hearing if the court, upon consideration of all the evidence presented at the annual review, finds the committed person has proved by a preponderance of the relevant and reliable evidence that a reasonable person would believe a hearing should be held to determine whether (a) the mental abnormality of the committed person has so changed that the person is not likely to engage in predatory acts constituting sexually violent offenses if discharged or (b) the committed person is suitable for placement in a transitional release program. This standard for determining whether a final hearing is required is satisfied if a reasonable person would find, from the relevant and reliable evidence presented at the annual review stage, that the committed person has

more likely than not generated a fact question on either of the issues enumerated in section 229A.8(5)(*e*)(1)(*a*) or (*b*).[5]

Our interpretation of the statute as amended would be incomplete without a discussion of what the general assembly intended in adding the requirement that evidence must be reliable if it is to count in meeting the committed person's burden of proving an entitlement to a final hearing. As we have noted, the former version of the statute required only that evidence rebutting the presumption of continued commitment at the annual review stage be competent. In *Johnson*, we decided the general assembly intended the word "competent" to mean "admissible" evidence. 756 N.W.2d at 851 n.4. As we have already noted, the 2009 amendment substituted the words "relevant and reliable" for the word "competent." In considering the meaning of these words in the context of section 229A.8(5) as amended, we first note the Iowa Rules of Evidence

---

[5]A preliminary determination under section 229A.8(5)(*e*)(1) that a committed person has made a showing at the annual review stage entitling him to a final hearing must be distinguished from the adjudication of the merits of a committed person's request for discharge or placement in a transitional release program after a final hearing. A preliminary determination—based on the entire written annual review record alone—that a reasonable person could find a final hearing is warranted is not tantamount to a finding that the State will be unable to prove beyond a reasonable doubt at the final hearing that the committed person has failed to rebut the presumption of continued commitment. Stated another way, we leave room for the possibility that a preliminary showing that satisfies the committed person's burden to prove a reasonable person would, after examining the entire annual review record, find a preponderance of the evidence supports a determination that a factual question remains regarding either the committed person's request for discharge or placement in a transitional release program is not dispositive of the different issues or claims submitted for determination at the final hearing. As we have noted, the annual review and final hearing adjudications are based on different records. *Compare* § 229A.8(5)(*a*) (committed person not entitled to be present at the annual review hearing), *with id.* § 229A.8(6)(*a*) (entitling the committed person to a jury trial of the final hearing issues and all other constitutional rights, including the right to be present and present evidence, that are guaranteed at the original commitment proceeding). Furthermore, unlike at the annual review stage, at the final hearing the burden of proving beyond a reasonable doubt that the committed person is not ready for discharge or placement in a transitional release program is allocated to the State.

do not apply to an annual review. Iowa Code § 229A.8(5)(*b*). Yet, the general assembly allocated to the court in terms (relevant and reliable) commonly used in judicial proceedings the function of deciding whether a committed person has satisfied a prescribed burden of proof. Thus, although the rules of evidence are not controlling at the annual review stage, we conclude the general assembly attached to the words "relevant and reliable" meanings commonly assigned to them in our jurisprudence.

In the realm of expert opinion testimony, evidence is relevant only if it is reliable and helpful to the fact finder. *Johnson v. Knoxville Cmty. Sch. Dist.*, 570 N.W.2d 633, 637 (Iowa 1997) (noting unreliable evidence "cannot assist a trier of fact"). The reliability of experts' opinions based on scientific, technical, or other specialized knowledge is generally assured by the district court's enforcement of rule 5.702 requiring experts be qualified "by knowledge, skill, experience, training, or education." Iowa R. Evid. 5.702. When expert opinions are based on novel or complex scientific matters, however, a "more expansive judicial" assessment of reliability is justified. *See Ranes v. Adams Labs., Inc.*, 778 N.W.2d 677, 686–87 (Iowa 2010). When expert opinions are instead based on nonnovel scientific, technical or other specialized knowledge our "conventional rule [5.]702 analysis is appropriate." *Johnson*, 570 N.W.2d at 639 (concluding admissibility of expert opinion testimony on the subject of whether a child's obsessive compulsive disorder traits were caused by head trauma was not based on scientific knowledge of a type requiring heightened scrutiny as to reliability).

**E. Application of Standard to Taft's Claim for Discharge.** We now consider whether the district court erred in finding (1) Dr. Rypma's opinions were unreliable and (2) Taft failed to satisfy his burden of proving he was entitled to a final hearing on the question of his fitness

for discharge. Like the testimony of the neuropsychiatrist in *Johnson*, Dr. Rypma's opinions regarding Taft's mental abnormality are clearly based on his expertise as a licensed clinical psychologist and his education and professional experience, and cannot be classified as "novel scientific testimony." *Id.* at 639. Accordingly, the reliability of Dr. Rypma's opinions is evaluated under conventional rule 5.702 analysis.

In assessing the reliability of Dr. Rypma's report, the district court was authorized to: (1) "determine if the testimony 'w[ould] assist the trier of fact' in understanding 'the evidence or to determine a fact in issue' " and (2) "determine if the witness [wa]s qualified to testify 'as an expert by knowledge, skill, experience, training, or education.' " *Ranes*, 778 N.W.2d at 685 (quoting Iowa R. Evid. 5.702). Although the State did not challenge the reliability of Dr. Rypma's opinions against this standard, the district court nonetheless found Dr. Rypma's opinions unreliable. The court's ruling stated in relevant part:

> Dr. Rypma seems to minimize the major rule violations that have been consistently reported in all of the evidence presented to the Court. . . . The Court believes that the weight of the evidence shows that these major rule violations are significant as to the factors that are examined to shed light on the likelihood of reoffending. As such, on this basis *Dr. Rypma's report is less credible.*
>
> . . . .
>
> When weighing the evidence presented by the parties, the Court does not find Dr. Rypma's report to be reliable. Specifically, Respondent's two mental abnormalities, specifically, pedophilia and dissocial/anti-social personality disorder (or a mixed personality disorder NOS) have not changed according to the outcome measures used at CCUSO. Dr. Rypma does not offer an objective measure for his assumption that the Respondent's risk to offend has reduced. The only factors noted by Dr. Rypma are that time has passed and that the Respondent reports that he feels he is ready for a discharge. The Court does not find these

> factors to be reliable. In addition, as noted above, Dr. Rypma's discussion of and lack of significance given to the Respondent's incident reports detracts from the credibility and, therefore, reliability of his report and recommendation.
>
> Based upon all of the above, when weighing the evidence of the parties, the Court does not find that the Respondent has shown by a preponderance of the evidence that there is relevant and reliable evidence to rebut the presumption of continued commitment.

(Emphasis added.)

Taft contends the district court erred in assessing the reliability of Dr. Rypma's opinions without regard to the expert's qualifications or the tendency of his opinions to assist the court in understanding the evidence or to determine a fact in issue. Taft further contends the portion of the district court's ruling quoted above clearly reveals the court erred in making its reliability determination based on its perceptions of the relative persuasiveness of Dr. Rypma's opinions when weighed against the opinions of the State's experts on the question of Taft's continuing dangerousness and eligibility for discharge. Taft argues that the function of assigning relative weight to the opinions of the parties' experts' opinions is not properly exercised by the court at the annual review stage. The weighing function, he argues, is instead to be performed by the fact finder at the final hearing.

In this case, the district court was authorized at the annual review stage to determine whether Dr. Rypma's opinions met the threshold level of reliability for technical or other specialized knowledge. *See* Iowa R. Evid. 5.702. If the opinions met this threshold of reliability, the court's next inquiry under section 229A.8(5)(*e*) was whether the evidence raised a factual question regarding Taft's continuing dangerousness or his suitability for transitional release. The appropriate inquiry at that stage was not, however, whether the persuasive force of Dr. Rypma's opinions

exceeded that of the opinions offered by the State's experts on the merits. *Cf., IBP, Inc. v. Al-Gharib*, 604 N.W.2d 621, 631 (Iowa 2000) (noting that the appropriate fact finder must "determine[] the weight to be given to any expert testimony"). In determining at the annual review stage whether a genuine issue of material fact warranting a final hearing exists, it is "not the court's role . . . to weigh such evidence against the countervailing evidence in the record." *Cf. Kern v. Palmer Coll. of Chiropractic*, 757 N.W.2d 651, 661 (Iowa 2008); *Mercy Hosp. v. Hansen, Lind & Meyer, P.C.*, 456 N.W.2d 666, 672 (Iowa 1990) (noting that it is a function of the fact finder " 'to decide which of the experts *was more* credible, which used *the more* reliable data, and whose opinion—if any— the [fact finder] would accept' " (emphasis added) (quoting *Grenada Steel Indus., Inc. v. Ala. Oxygen Co.*, 695 F.2d 883, 889 (5th Cir. 1983))).

We, therefore, agree with Taft's contention that the district court erred in its method of assessing the reliability of Dr. Rypma's opinions. Nonetheless, assuming without deciding that Dr. Rypma's report met the threshold level of reliability for the annual review stage under section 229A.8(5)(*e*), we find no error in the district court's finding that Taft failed to meet his burden to prove he is entitled to a hearing on his discharge claim.

The summary and recommendations section of Dr. Rypma's report read in relevant part:

> Mr. Taft has now completed his 5th year of treatment. He has achieved progress in all areas of treatment and *it is abundantly clear that he now is ready for advancement to the transitional release phase of the program.* This advancement would benefit the community, as well as provide the patient with continued opportunities to demonstrate additional progress and emotional growth. . . .
>
> *It is therefore the opinion of this evaluator, within a reasonable degree of professional certainty, that Mr. Taft is*

*now at a point of his therapeutic process that advancement to the transitional release, phase is at least appropriate.* This client feels he is now ready for discharge, and given that he has achieved the age of 40, and given that his last sexual crime occurred some 19 years ago, *it is reasonable to assume that his risk has now fallen below the stat[utory] threshold of more likely than not.*

*Should the Court decide that discharge, is not appropriate for this client, he has demonstrated that he is ready for this advancement to transitional release, and this advancement will allow Mr. Taft to continue to demonstrate continued therapeutic progress.* Furthermore, advancement to Track A of the Transitional Release Phase will require that this client remains confined; it is this evaluators understanding that those in Track A simply are permitted to move into their own private room and any outings would be chaperoned.

(Emphasis added.)

In its ruling, the district court noted "it is not clear from Dr. Rypma's report whether he is recommending that the Respondent is ready for discharge. Rather, Dr. Rypma indicates that the Respondent feels that he is ready for discharge." We agree with the district court's finding that Dr. Rypma's report did not include an unequivocal opinion that Taft should be discharged. In the absence of such evidence, we affirm the district court's determination that Taft failed to satisfy his burden of proof at the annual review stage on his claim for discharge.

**F. Application of the Standard to Taft's Transitional Release Claim.** Taft alternatively contends the district court erred in denying him a final hearing on the question of his eligibility for transitional release. Transitional release is a treatment phase in which the committed person "is gradually given increasing opportunities to live in less restrictive settings. The patient is monitored closely, assessed clinically, and provided support as the patient takes on increasing responsibility for the patient's own care." *Swanson v. Civil Commitment Unit for Sex Offenders*, 737 N.W.2d 300, 303 (Iowa 2007).

A committed person is statutorily ineligible for transitional release if he has been issued any "major discipline reports" within a period of six months. Iowa Code § 229A.8A(2)(*e*). The district court concluded Taft was statutorily ineligible for transitional release based primarily upon his incurring six major disciplinary reports within the six-month review period. *See id.* We agree with that conclusion. Taft does not deny he received the disciplinary reports. Although Dr. Rypma discounted the significance of the reports because they were not based on allegations of sexual misconduct by Taft, the plain language of section 229A.8A(2)(*e*) disqualifies from transitional release any committed person who has received any major disciplinary report during the previous six months. The undisputed evidence at the annual review stage clearly established Taft was not eligible for placement in the transitional release program.

Taft contends the application of section 229A.8A(2)(*e*) under the facts of this case violates his right to due process because it "imposes a precondition on release that is not related to dangerousness or mental illness." We do not reach this argument, however, because it was not adequately raised and was not decided in the district court. Even issues implicating constitutional rights must be presented to and ruled upon by the district court in order to preserve error for appeal. *State v. Biddle*, 652 N.W.2d 191, 203 (Iowa 2002).

At the hearing on his petition for final review, Taft's counsel argued that "given the criteria for major reports at the CCUSO unit," section 229A.8A(2)(*e*) constituted "an unconstitutional imposition of a limitation on a less restrictive placement." While we generally oppose the "elevat[ion of] form over substance" in conducting error preservation analysis, we note Taft did not cite a specific constitutional principle or provision in support of his challenge to section 229A.8A(2)(*e*). *Office of*

*Consumer Advocate v. Iowa State Commerce Comm'n*, 465 N.W.2d 280, 283–84 (Iowa 1991) (noting that error was preserved on a due process argument where the party cited the Fourteenth Amendment but not the Due Process Clause in support of its constitutional challenge); *see also City of Muscatine v. Northbrook P'ship Co.*, 619 N.W.2d 362, 368 n.2 (Iowa 2000) (holding a party failed to preserve error on its constitutional due process argument concerning notice when they did not cite any state or federal constitutional provision to the trial court or otherwise explain how lack of notice violated their constitutional rights). A party cannot preserve error for appeal by making only general reference to a constitutional provision in the district court and then seeking to develop the argument on appeal. *Kartridg Pak Co. v. Dep't of Revenue*, 362 N.W.2d 557, 561 (Iowa 1985).

Furthermore, the district court did not rule on the constitutionality of section 229A.8A(2)(*e*). The district court simply determined Taft was statutorily ineligible for transitional release based primarily on the major disciplinary reports and made no mention of a constitutional claim in its ruling. Taft did not file a motion to enlarge or amend the court's ruling. *See State v. Mitchell*, 757 N.W.2d 431, 435 (Iowa 2008) (noting that when the district court fails to address a constitutional argument raised by the defendant the defendant must "file a motion to enlarge the trial court's findings or in any other manner have the district court address th[e] issue"). Because Taft's due process argument was not adequately raised or ruled upon by the district court, we conclude it was not preserved for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

**IV.  Conclusion.**

We affirm the district court's determination that Taft failed to demonstrate by a preponderance of the evidence that he was entitled to a final hearing on either discharge or placement in a transitional release program.

**WRIT ANNULLED.**