**IN THE COURT OF APPEALS OF IOWA**

No. 12-1815
Filed April 30, 2014

**IN RE THE DETENTION OF**
**GALEN KENDRICK SHAFFER,**

**GALEN KENDRICK SHAFFER,**
        Respondent-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Joel A. Dalrymple, District Judge.

Galen Kendrick Shaffer challenges the district court's denial of his request for a final review hearing pursuant to Iowa Code Iowa Code section 229A.8. **WRIT SUSTAINED, CASE REMANDED FOR FURTHER PROCEEDINGS.**

Michael Adams, Local Public Defender, Thomas Gaul, Special Defense Unit, and Michelle Grau, Legal Intern, for appellant.

Thomas J. Miller, Attorney General, John McCormally, Assistant Attorney General, for appellee.

Considered by Vogel, P.J., and Tabor and McDonald, JJ.

**MCDONALD, J.**

Galen Kendrick Shaffer challenges the district court's denial of his request for a final hearing pursuant to Iowa Code section 229A.8 to determine whether he can be discharged from his commitment as a sexually violent predator or placed in a transitional release program. Shaffer contends relevant and reliable evidence at his annual review rebuts the presumption of continued commitment such that a reasonable person would believe a final hearing should be held. We agree.

I.

Certiorari actions are reviewed for correction of errors at law. *See Taft v. Iowa Dist. Ct.*, 828 N.W.2d 309, 312 (Iowa 2013). In reviewing certiorari actions, we examine "only the jurisdiction of the district court and the legality of its actions." *Id.* (citation and quotation marks omitted). "Illegality exists when the court's factual findings lack substantial evidentiary support, or when the court has not properly applied the law." *Id.* (citation and quotation marks omitted).

II.

On March 17, 2010, Shaffer was civilly committed pursuant to Iowa Code chapter 229A (2009) as a sexually violent predator. Under the statute, there is a rebuttable presumption in favor of extending the civil commitment of a sexually violent predator. *See* Iowa Code § 229A.8(1). However, "[r]ecognizing that civil commitment proceedings must comport with the Due Process Clause, the general assembly established a protocol for periodic reviews of the status of each committed person." *Taft*, 828 N.W.2d at 312. "The protocol includes an annual examination of a committed person's mental abnormality. A report of the

results of each annual examination must be submitted to the court that ordered the committed person's commitment." *Id.* at 312-13. The committed person can rebut the presumption of continued commitment at the annual review stage and seek discharge or placement in a transitional release program by establishing facts sufficient to warrant a "final hearing" to determine whether the "committed person no longer suffers from a mental abnormality which makes the person likely to engage in predatory acts constituting sexually violent offenses if discharged, or the committed person is suitable for placement in a transitional release program." Iowa Code § 229A.8(1).

In 2012, in conjunction with his annual examination and the preparation of his annual report, Shaffer petitioned for discharge or placement in a transitional release program. *See* Iowa Code § 229A.8(4) (2011). At Shaffer's annual review, the court received reports from two experts: Dr. Tracy A. Thomas for the State; and Dr. Richard Wollert for Shaffer. The district court briefly summarized the content of the two reports, set forth the correct statutory standard, and concluded as follows: "The Court having reviewed the annual report of the state and the report by Dr. Wollert of the respondent, the Court finds the respondent has failed to meet his said burden." The court did not make any findings or set forth any explanation for its conclusion that Shaffer failed to meet his burden.

The legal standard for determining whether the facts are sufficient to warrant a "final hearing" is set forth in chapter 229A. The relevant standard, as explained in *Taft*, is as follows:

> [U]nder section 229A.8(5)(e)(1), a committed person is entitled to a final hearing if the court, upon consideration of all the evidence presented at the annual review, finds the committed person has

proved by a preponderance of the relevant and reliable evidence that a reasonable person would believe a hearing should be held to determine whether (a) the mental abnormality of the committed person has so changed that the person is not likely to engage in predatory acts constituting sexually violent offenses if discharged or (b) the committed person is suitable for placement in a transitional release program. This standard for determining whether a final hearing is required is satisfied if a reasonable person would find, from the relevant and reliable evidence presented at the annual review stage, that the committed person has more likely than not generated a fact question on either of the issues enumerated in section 229A.8(5)( e )(1)( a ) or ( b ).

*Taft*, 828 N.W.2d at 318.

In applying the statutory standard, we note three things of import. First, "although the rules of evidence are not controlling at the annual review stage, we conclude the general assembly attached to the words 'relevant and reliable' meanings commonly assigned to them in our jurisprudence." *Id.* at 319. Thus, the district court, in reviewing the request for final hearing, has the authority to evaluate the quality of the evidence offered on the issues and can eschew any evidence that is not "relevant and reliable." Second, the grounds for a final hearing are set forth in the disjunctive. That is, the committed person establishes an entitlement to a final hearing by generating a fact question "on *either* of the issues enumerated in section 229A.8(5)(e)(1)(a) or (b)." *Id.* at 318 (emphasis added). Third, *Taft* indicates that the requisite showing is something less than that required to survive a motion for summary judgment. That is, the committed person is not required to generate a question of fact. Instead, the committed person only has to show by a preponderance of the evidence that he or she "*more likely than not* generated a fact question . . . ." *Id.* (emphasis added). With these things in mind, we turn our attention to the question presented.

We first address whether Shaffer more likely than not generated a fact question on the issue of whether he is suitable for placement in a transitional release program pursuant to subparagraph (b). A committed person is suitable for placement in a transitional release program only if the court finds that he or she has satisfied all of the conditions set forth in Iowa Code section 229A.8A(2). Further, the committed person must agree to the conditions of release and agree to register as a sex offender. *See* Iowa Code § 229A.8A(3) and (4). Here, Dr. Thomas's report evaluated whether Shaffer met each of the conditions set forth in section 229A.8A(2), concluding that Shaffer did not satisfy six of the nine conditions for placement in a transitional release program. Shaffer's expert's report did not at all address the conditions for placement pursuant to subparagraph (b). Accordingly, Shaffer failed to generate a question of fact on this issue. *See Taft*, 828 N.W.2d at 323 (holding no fact question created where undisputed evidence showed SVP was not statutorily eligible for transitional release).

We next address whether Shaffer more likely than not generated a question of fact on the issue of whether his mental abnormality has so changed that he is not likely to engage in predatory acts constituting sexually violent offenses if discharged pursuant to subparagraph (a). Dr. Thomas's report noted that Shaffer was previously found to suffer the mental abnormality of pedophilia. The report found that Shaffer reported continued sexual attraction to children and teenagers. Dr. Thomas could not opine whether the disorder was resolved or otherwise manageable because Shaffer had been committed in a secured facility and needed to be in a more independent living environment before that

determination could be made. Dr. Thomas further opined that dynamic risk factors made it more likely than not that Shaffer would reoffend. In contrast, Dr. Wollert concluded that the State's actuarial risk models were inherently flawed or misapplied to Shaffer. For example, Dr. Wollert's report states that one of the State's actuarial risk models is so psychometrically flawed that it was withdrawn from use by its developer. Dr. Wollert further opined, based on a personal interview and assessment of Shaffer and the application of a purportedly more sound actuarial risk model, Shaffer no longer suffers from a mental abnormality and is unlikely to engage in predatory acts constituting sexually violent offenses if discharged.

Chapter 229A does not require a "mini-trial" on the evidence presented at the annual review on questions that ultimately will be decided at a final hearing, if granted. *See Taft*, 828 N.W.2d at 317. The ultimate weight to be given to the evidence is for the finder of fact at the final hearing. *See id.* at 321. All that is required at the annual review stage is the committed person establish through relevant and reliable evidence that there is more likely than not a question of fact on one of the two statutory grounds for final hearing. With respect to expert opinion evidence, the first step in the analysis is determine whether the expert's opinion meets "the threshold level of reliability for technical or specialized knowledge." *See id.* at 320-21. *Taft* provides that the threshold test for "reliability" of an expert's opinion "is generally assured by the district court's enforcement of rule 5.702 requiring experts be qualified 'by knowledge, skill, experience, training, or education." *Id.* at 319. Dr. Wollert holds a Ph.D. in clinical psychology. He is a tenured professor and licensed clinical psychologist.

He has significant experience in the area, treating over 1000 sex offenders and being retained in over 200 sexual predator cases. He has published thirteen articles on the risk and diagnostic status of sex offenders. He conducts training and other presentations on the topic of evaluating sex offenders, including conducting a training for the State at the Civil Commitment Unit for Sexual Offenders at the Cherokee Mental Health Institute where Shaffer is committed. In short, his report is "reliable" within the meaning of the statute and *Taft*. *See* Iowa Code § 229A.8(5)(e)(1); *Taft*, 828 N.W.2d at 320-21.

Once the "threshold of reliability" is met, the "next inquiry under section 229A.8(5)(e) [is] whether the evidence raised a factual question regarding Taft's continuing dangerousness or his suitability for transitional release." *Taft*, 828 N.W.2d at 321. "The appropriate inquiry" at this stage is not determining whether the persuasive force of one opinion exceeds the other; rather it is determining whether it is more likely than not a fact question was generated. *See id.* Here, Dr. Wollert's report gives an unequivocal opinion that Schaffer is no longer "positive for suffering from a mental abnormality." Dr. Wollert also opines that Schaffer "is unlikely to engage in predatory acts constituting sexually violent offenses if unconditionally discharged." The report also provides Dr. Wollert holds those opinions to a reasonable degree of certainty. This opinion is in direct contradiction to the State's expert report on the material issue presented. Schaffer has thus carried his burden of establishing it is more likely than not that he generated a fact question on whether he is likely to commit acts constituting sexually violent offenses. The district court erred in holding otherwise.

III.

For the foregoing reasons, Shaffer's petition for writ of certiorari is sustained. The district exceeded its jurisdiction and otherwise acted illegally in denying Shaffer's request for final hearing. This matter is remanded to the district court for further proceedings.

**WRIT SUSTAINED, CASE REMANDED FOR FURTHER PROCEEDINGS.**

**VOGEL, P.J.** (concurring in part and dissenting in part)

I concur that the writ should be sustained but respectfully dissent from the majority's application of the *Taft* test. I believe, that in applying the *Taft* test to these facts, the majority has exceeded our limited role of appellate review of a certiorari action. That role is circumscribed by our standard of review, which is for correction of errors at law, not de novo. *Matlock v. Weets*, 531 N.W.2d 118, 121 (Iowa 1995). Therefore, we should not be applying the *Taft* test to these facts but should remand to allow the district court to carry out its statutory directive, a role within its exclusive purview.

As the majority notes, the district court did not have the guidance of *Taft* when it denied Shaffer a final hearing. When the district court does not have the guidance of a particular test or applies the incorrect standard, "we remand for new findings and application of the correct standard." *State v. Robinson*, 506 N.W.2d 769, 770–71 (Iowa 1993). Even when a new test is articulated during the pendency of an appeal, the correct remedy is to remand the case to the district court so it may apply the proper test. *See State v. Showens*, ___ N.W.2d ___, 2014 WL 1400080, at *12-13 (Iowa 2014) (remanding the case where it was unclear whether the district court applied the correct standard, the supreme court outlined the proper standard in its current decision, and the supreme court noted that "we are not the trier of fact").

As guidance, our supreme court recognized in *Taft* that the 2009 amendment to the statute "enhance[d] the level of scrutiny applied by the district court in making the decision on a request for a final hearing. The court must now consider all of the evidence presented and in deciding whether the committed

person has met his burden, weigh only evidence that is reliable." 828 N.W.2d at 318. First the district court must determine what evidence is relevant. *Id.* Having referenced both experts' opinions in its ruling, relevance does not appear to be an issue in this case. Next, the district court must determine the reliability of such evidence. *Id.* at 319. This was not done in this case, and it is not our role to take on that task with our limited judicial review. Next, the district court must "weigh only evidence that is reliable" to determine whether, as proved by a preponderance of the evidence,

> a reasonable person would believe a hearing should be held to determine whether (a) the mental abnormality of the committed person has so changed that the person is not likely to engage in predatory acts constituting sexually violent offenses if discharged or (b) the committed person is suitable for placement in a transitional release program. This standard for determining whether a final hearing is required is satisfied if a reasonable person would find, from the relevant and reliable evidence presented at the annual review stage, that the committed person has more likely than not generated a fact question on either of the issues enumerated in section 229A.8(5)(e)(1)(a) or (b).

*Id.* at 318.[1]

The district court engaged in no weighing of the reliable evidence. Because the *Taft* test was not applied by the district court, I would decline to apply the test and would simply remand the case so the district court may apply the correct standard when deciding whether or not to grant Shaffer a final hearing. *See Garren v. Iowa Dist. Ct.*, No. 07-0714, 2008 WL 4822578, at *2 (Iowa Nov. 7, 2008) (sustaining the writ but remanding the case to the district

---

[1] I submit that evidence that may be in equipoise does not meet the statutory test of producing a "preponderance" of the evidence.

court to apply a new standard to determine whether a sexually violent predator was entitled to a final hearing).