**IN THE COURT OF APPEALS OF IOWA**

No. 19-0447
Filed November 27, 2019

**JAMES EARL SHEPARD,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.

_____

Appeal from the Iowa District Court for Clinton County, Mark D. Cleve,

Judge.

James Shepard appeals following the denial of his second application for

postconviction relief. **AFFIRMED.**

Lauren M. Phelps, Hudson, Florida, for appellant.

Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney

General, for appellee State.

Considered by Bower, C.J., and May and Greer, JJ.

**BOWER, Chief Judge.**

James Shepard appeals following the denial of his second application for postconviction relief (PCR). Shepard argues the postconviction court erred in finding he was not prejudiced by trial counsel's and first postconviction counsel's ineffective assistance.[1]

"Our review of postconviction-relief proceedings is typically for correction of errors at law. But when we are reviewing an ineffective-assistance-of-counsel claim, we do so de novo because such claims are constitutional in nature." *Ruiz v. State*, 912 N.W.2d 435, 439 (Iowa 2018) (internal citations omitted).

> To succeed on [an] ineffective-assistance-of-counsel claim, [Shepard] must prove (1) counsel failed to perform an essential duty and (2) prejudice resulted. To establish the first prong, [Shepard] must show [his] counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." We approach the first prong with the presumption counsel performed [their] duties competently; "we measure counsel's performance against the standard of a reasonably competent practitioner." Although not required to predict changes in the law, "counsel must 'exercise reasonable diligence in deciding whether an issue is "worth raising."'" Counsel is not burdened with the duty to raise an issue that has no merit. The second prong—prejudice—results when "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different."

---

[1] Shepard also claims his second postconviction counsel was ineffective in failing to raise an equal protection challenge to *Strickland's* prejudice standard. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). We do not address this second claim as it was not raised below. *See Taft v. Iowa Dist. Ct.,* 828 N.W.2d 309, 322 (Iowa 2013) ("Even issues implicating constitutional rights must be presented to and ruled upon by the district court in order to preserve error for appeal."). In any event, our supreme court has stated in another context that "the distinction between direct review and collateral review applications does not violate the equal protection clause." *Cf. Nguyen v. State*, 878 N.W.2d 744, 758 (Iowa 2016) (concerning non-retroactivity of *State v. Heemstra*, 721 N.W.2d 549 (Iowa 2006)) (discussing *Everett v. Brewer*, 215 N.W.2d 244, 247 (Iowa 1974)).

*State v. Brown*, 930 N.W.2d 840, 855 (Iowa 2019) (internal citations omitted). An applicant's failure to prove either element by a preponderance of the evidence is fatal to a claim of ineffective assistance. *State v. Polly*, 657 N.W.2d 462, 465 (Iowa 2003).

Shepard's conviction stems from the following events. In the early morning hours of May 24, 2006, an African-American man clad in all black clothing, a du rag,[2] and "something black over his mouth," robbed a Kwik Star convenience store in Clinton, Iowa. He took a bank bag and approximately $1400 in cash in the form of rolled coins and bills. Later that day, Shepard asked Hollie Abbott to give him a ride to a motel in Clinton and register the motel room in her name. He paid her in cash and carried a maroon backpack. Shepard told Abbott he was leaving Clinton and Jami Kinney, the mother of his children, would be picking him up so he could return to Michigan.

Later that morning, the maintenance supervisor for Shepard's apartment complex discovered the Kwik Star's bank deposit bag containing three U.S. Bank money wraps in the dumpster outside Shepard's apartment. He turned the bag over to police. Police searched the dumpster and found black clothing and a black du rag inside.

The next day, Jami Kinney was stopped in her vehicle while driving in Michigan. A consent search of the vehicle led to the discovery of a maroon backpack, which contained three bundles of one-dollar bills (totaling $301) separately bound in plastic rings cut from a beverage carrier.

---

[2] The term du rag is a derivation of "Hairdoo rag," and it is a "silk-like material worn around the head . . . wrap[ped] around the skull, with a small flap hanging down in the rear, over the neck." *Du rag*, Urban Dictionary, http://urbandictionary.com/define.php?term=Du%20rag.

As police investigated the crime, Shepard was identified by Kinney's family and his neighbor as the perpetrator depicted in surveillance footage from the robbery. A search of Shepard's apartment yielded multiple black du rags, black pants, and torn coin wrappings similar to those used at Kwik Star. Shepard's fingerprints were identified on the money bands within the bank deposit bag and his DNA was identified on the du rag found in the dumpster. Shepard was charged with first-degree robbery.

At trial, four individuals who knew or were familiar with Shepard identified Shepard as the individual from still photographs taken from the videotape. Two of the witnesses, Lisa Klass-Kinney and Brittany Hull, had shared a residence with Shepard. Klass-Kinney—Jami Kinney's mother—had seen the picture of the robbery suspect on television, recognized Shepard, and contacted law enforcement. Also admitted into evidence were statements made by Shepard to Michigan law enforcement admitting to the robbery. Shepard was convicted as charged.

Shepard's direct appeal was dismissed as frivolous and procedendo issued on June 9, 2008.

Shepard filed his first PCR action in 2009, and the district court denied relief in January 2014. During the appeal of his first PCR, Shepard's appointed counsel sought a remand after obtaining the audio recording of the statements made by Shepard to Michigan law enforcement, which counsel concluded were induced by promises of leniency and threats. When the supreme court denied the remand, counsel voluntarily dismissed the appeal from Shepard's first PCR action and filed this second PCR application, asserting trial and appellate counsel provided

constitutionally-defective assistance in failing to challenge the admissibility of Shepard's statements to Michigan law enforcement.

The State filed for summary dismissal in October 2017, arguing Shepard's second application was untimely under Iowa Code section 822.3 (2017).[3] The State withdrew its motion to dismiss, however, conceding the application was timely pursuant to *Allison v. State*, 914 N.W.2d 866, 891 (Iowa 2018).

After trial, the PCR court found trial counsel and the initial PCR counsel had breached a duty in not challenging the voluntariness of Shepard's confession, but concluded Shepard did not prove the error was prejudicial. We agree with PCR court that "there is very strong, and in fact compelling evidence of" Shepard's guilt,[4] negating a conclusion that but for counsel's error the result of the proceeding would have been different. *See State v. Hopkins*, 576 N.W.2d 374, 380 (Iowa 1998). We therefore affirm.

**AFFIRMED.**

---

[3] We are aware Iowa Code section 822.3 was amended, effective July 1, 2019, to provide, "[a]n allegation of ineffective assistance of counsel in a prior case under this chapter shall not toll or extend the limitation periods in this section nor shall such claim relate back to a prior filing to avoid the application of the limitation periods." Yet, the State waived a statute-of-limitations defense by withdrawing its motion to dismiss and has not raised the issue on appeal.

[4] Shepard's criminal trial counsel testified:

> I recall that the confession didn't seem to make a lot of difference, given the weight of the evidence. I think there were several eyewitnesses who identified Mr. Shepard from still photographs; apparently his mask slipped off during the commission of the robbery. There was some forensic evidence found either in his home or in a dumpster that would be associated with his apartment, which I think was fairly near the crime scene. . . . He did not testify in that case, but my overall impression was there was an overwhelming amount of evidence in that case against Mr. Shepard.