# IN THE COURT OF APPEALS OF IOWA

No. 22-1594
Filed July 24, 2024

**BRIANA N. ASMUS, n/k/a BRIANA N. HESSE,**
    Plaintiff,

**vs.**

**IOWA DISTRICT COURT FOR CLINTON COUNTY,**
    Defendant.

_____

**RYAN J. VANZUIDEN,**
    Petitioner-Appellee,

**vs.**

**BRIANA N. ASMUS, n/k/a BRIANA N. HESSE,**
    Respondent-Appellant.

_____


        Appeal from the Iowa District Court for Clinton County, Stuart P. Werling,

Judge.


        A mother appeals the district court's order finding her in contempt, the

sentence imposed, and the modification of visitation. **WRIT ANULLED IN PART,**

**GRANTED IN PART, AND REMANDED WITH DIRECTIONS; MODIFICATION**

**AFFIRMED.**

Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, for appellant.

Robert S. Gallagher of Gallagher, Millage & Gallagher, P.L.C., Bettendorf, for appellee.

Considered by Badding, P.J., Langholz, J., and Bower, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**BOWER, Senior Judge.**

In this partial-certiorari action, Briana Hesse challenges the district court's order finding her in contempt and the sentence imposed. Hesse also challenges the modification of visitation ordered by the court. We grant the writ as to the finding of contempt and remand with directions to apply the beyond-a-reasonable-doubt burden of proof. We annul the writ as to the sentence imposed, as long as each sentence of contingent jail time and the make-up visitation are based on separate findings of contempt, and direct the court to clarify the basis for the sentences on remand. We affirm the modified visitation schedule.

## I.    *Background Facts and Prior Proceedings*

Hesse and Ryan VanZuiden are the parents of one child, A.V., born in March 2010. They were never married. In their original custody decree, the court placed physical care of A.V. with Hesse and awarded VanZuiden visitation every other weekend from Friday at 5:00 p.m. until Sunday at 6:00 p.m. along with summer visitation for two, one-week periods. This visitation schedule worked for several years. After the parties disputed the exact parameters of visitation and VanZuiden missed some scheduled visitation, VanZuiden filed a motion to show cause for contempt and a petition for modification of summer visitation, claiming Hesse intentionally interfered with his visitation with A.V. and asking for additional visitation and a more well-defined summer visitation schedule going forward.

The district court held a show cause hearing at which VanZuiden testified. He stated that once he was sent home from work due to the COVID pandemic, he went to his girlfriend's parents' retirement home in Arizona and missed weekend visitation for four months. He had A.V. for one week over the summer in Arizona,

but then, VanZuiden claimed, Hesse refused visitation over the next year. At one point VanZuiden "booked a flight to come home, and [his] mom was in charge of picking [A.V.] up and meeting [them] at the airport," but Hesse refused to let A.V. go with VanZuiden's mom. After returning from Arizona a year later, VanZuiden drove three hours to pick up A.V. at least four times for visitation that Hesse refused to allow. Also, in the four months prior to the hearing, Hesse prevented any visitation at all. VanZuiden admitted that he did not have any contact with A.V. from the time A.V. was born until he was three years old, but he did not explain his absence to A.V. because "no child remembers that part of their life."

Hesse also testified. She stated VanZuiden often did not pick up A.V. but sent his parents or grandparents instead. When VanZuiden restarted visitation after returning from Arizona, A.V. "was very blindsided" and "very angry with [Hesse] that [she] forced him to go, which [she] did." During one attempt at visitation, A.V. told VanZuiden that he did not want to go with him because VanZuiden was harassing Hesse. According to Hesse, A.V. also said to VanZuiden, "You took my mom to court. You weren't around for the first three years of my life. You didn't want my mom when she was pregnant." Hesse insisted that she did not influence A.V. to not want to attend visitation. However, she agreed visitation was required by court order and she told A.V. she "might be held in contempt of court if he didn't visit with his dad." At the same time, she testified she encouraged—but did not force—the visits between VanZuiden and A.V. to happen.

In addition, the court received as exhibits multiple text messages between Hesse and VanZuiden discussing visitation and videos depicting failed visitation

attempts. In one video, Hesse told VanZuiden, "I want to make it clear that I'm not not complying with this court order. I'm not resisting." The parties then disputed VanZuiden's involvement in A.V.'s life. A.V. looked toward the ground and then said, repeatedly, that he did not want to go to visitation with VanZuiden. He added that during visitation he often has to feed himself because VanZuiden sleeps until after noon. Then A.V. said to VanZuiden, "Also, I don't want to go because you harass my mom. Because you say mean things to her over message and that's— and the reason you left her a long time ago was 'cuz—I was—because she was pregnant with me." VanZuiden insisted A.V. had to go to visitation because it was court ordered, and Hesse responded because A.V. did not want to go to visitation, he did not have to go. In another video, Hesse repeatedly told A.V. to get in the car but A.V. refused. And in a third video, Hesse discussed visitation difficulties with VanZuiden's mom; she did not send A.V. with VanZuiden's mom for visitation.

In its written order and ruling, the court found that Hesse "has a litany of complaints against [VanZuiden] and it is clear she has shared them with A.V." She shared them "in an attempt to alienate A.V. from his father. A.V.'s expression of disinterest in visiting his father was created by [Hesse] and is not [A.V.]'s own thought." Those complaints included that "his father did not want him and that is why he was not around for three years," that VanZuiden "is abusive to [Hesse] both verbally and physically," and that "at the start of the pandemic, [VanZuiden] moved to Arizona to flee [his] parenting responsibilities." Furthermore, regarding visitation specifically, the court found Hesse "has refused [VanZuiden]'s visitation when he was [ten] minutes late arriving from Arizona. She has refused to allow [VanZuiden] to designate other family members to pick up [A.V.]. She has interrogated [A.V.]

in [VanZuiden]'s presence to elicit the child's refusal to attend visitation." The court then found Hesse's "conduct was willful and was intended to interfere with a lawful visitation order and schedule" and found Hesse in contempt. It sentenced her to sixty days in jail, but stayed mittimus for one and a half years. The court further ordered if Hesse "has no further violations of the visitation schedule, the contempt shall be deemed purged." In addition, the court ordered make-up visitation over all of Thanksgiving break, from Christmas Eve through the remainder of Christmas break, and six weeks of summer break. Regarding the requested modification of visitation, the court set visitation with VanZuiden every other weekend with four weeks each summer.

Hesse appeals, challenging both the finding of contempt and the sentence imposed as well as the modification of the visitation provisions.

## II. **Contempt Finding and Sentence**

"No appeal lies from an order to punish for a contempt, but the proceedings may, in proper cases, be taken to a higher court for revision by certiorari." Iowa Code § 665.11 (2021); *see also* Iowa R. App. P. 6.107(1)(a) ("Any party claiming a district judge . . . exceeded the judge's jurisdiction or otherwise acted illegally may commence an original certiorari action in the supreme court . . . ."). Our supreme court granted Hesse's petition for certiorari and transferred the case to our court. Thus, the first part of Hesse's claims rests on this petition.

Our review of a petition for writ of certiorari is for correction of errors at law. *Christensen v. Iowa Dist. Ct.*, 578 N.W.2d 675, 678 (Iowa 1998). "Illegality exists when the court's factual findings lack substantial evidentiary support, or when the court has not properly applied the law." *Id.* There is substantial evidentiary support

for a contempt ruling when "substantial evidence exists [in the record] that would 'convince a rational trier of fact that the alleged contemner is guilty of contempt beyond a reasonable doubt.'" *Id.* (quoting *Ervin v. Iowa Dist. Ct.*, 495 N.W.2d 742, 744–45 (Iowa 1993)); *accord McKinley v. Iowa Dist. Ct.*, 542 N.W.2d 822, 824 (Iowa 1996) ("Contempt must be established by proof beyond a reasonable doubt.").

As the party requesting a contempt finding, the burden was on VanZuiden to prove Hesse had a duty to obey a court order and she willfully failed to perform that duty. *Christensen*, 578 N.W.2d at 678; *see also* Iowa Code § 665.2 (listing acts constituting contempt). To prove Hesse willfully failed to perform a duty, VanZuiden had to further prove "conduct that is intentional and deliberate with a bad or evil purpose, or wanton and in disregard of the rights of others, or contrary to a known duty, or unauthorized, coupled with an unconcern whether the contemner had the right or not." *Ary v. Iowa Dist. Ct.*, 735 N.W.2d 621, 624 (Iowa 2007) (quoting *Lutz v. Darbyshire*, 297 N.W.2d 349, 353 (Iowa 1980)). Hesse then could have demonstrated her failure to comply was not willful by showing the court order was indefinite or she was unable to perform the act ordered. *See Christensen*, 578 N.W.2d at 678.

Here, however, the court did not clearly apply the correct burden of proof. Thus, we grant the writ in part and remand the case for the court to determine if there is evidence of willful failure by Hesse beyond a reasonable doubt. *See State v. DeMichelis*, No. 05-0962, 2006 WL 2267831, at *2 (Iowa Ct. App. Aug. 9, 2006) ("We vacate the trial court's ruling . . . and remand solely for the purpose of allowing the district court to rule on defendant's motion applying the correct weight-

of-the-evidence standard."); *State v. Curtis*, No. 04-1878, 2005 WL 1398337, at *2 (Iowa Ct. App. June 15, 2005) (conditionally affirming and remanding solely to allow the court to apply the correct burden of proof). Although VanZuiden asserts the court impliedly reviewed for evidence beyond a reasonable doubt, we find it prudent—in the absence of any stated review in the court's order—to remand for a clear determination of such. *See Dontje v. Iowa Dist. Ct.*, No. 09-0983, 2010 WL 1050007, at *4 (Iowa Ct. App. Mar. 24, 2010) (remanding when "the district court did not make any findings that these allegations . . . were proven beyond a reasonable doubt"); *State v. Wood*, No. 04-0020, 2004 WL 2677668, at *2 (Iowa Ct. App. Nov. 24, 2004) ("Based on the [court's] ambiguous statement, it is unclear what standard the district court actually applied. As a result, we conclude the case must be remanded to the district court for application of the correct legal standard."). If the court concludes that there is substantial evidence Hesse acted with willful disobedience beyond a reasonable doubt, *see McKinley*, 542 N.W.2d at 824; *In re Marriage of Ruden*, 509 N.W.2d 494, 496 (Iowa Ct. App. 1993), the judgment for contempt shall stand affirmed. If, on the other hand, the court finds insufficient evidence to establish willful disobedience beyond a reasonable doubt, the contempt judgment shall be vacated.

Although we grant Hesse's petition for writ of certiorari in part, we write further to provide additional guidance on remand. Regarding the sentence imposed, "courts enjoy wide discretion in determining and punishing contemptuous behavior." *In re S.D.L.*, 568 N.W.2d 41, 42 (Iowa 1997). "We interfere in such judgments only when discretion has been clearly abused, that is, when the court's decision rests on unreasonable or untenable grounds, or erroneous legal

conclusions." *Id.* Following a finding of contempt, "the person may be cited and punished by the court for contempt and be committed to the county jail for a period of time not to exceed thirty days for each offense." Iowa Code § 598.23(1); *see also Borland v. Iowa Dist. Ct.*, No. 07-0408, 2007 WL 4553604, at *5 (Iowa Ct. App. Dec. 28, 2007) (clarifying that if "there are multiple instances of contempt, each may be separately punished"). Furthermore, "[t]he court may, as an alternative to punishment for contempt . . . [modify] visitation to compensate for lost visitation time." *Id.* § 598.23(2)(b). However, "the court can modify visitation to compensate for lost visitation time, or impose a jail sentence, but not both." *Phillips v. Iowa Dist. Ct.*, 380 N.W.2d 706, 709–10 (Iowa 1986). A contingent sentence of jail time does not count as both. *Lamb v. Eads*, 346 N.W.2d 830, 831, 833 (Iowa 1984) (affirming the district court imposing thirty days of incarceration as punishment for contempt but allowing the defendant to avoid that sentence by paying back the missing child support); *Whitead v. Olson*, No. 23-1174, 2024 WL 1297594, at *9 (Iowa Ct. App. Mar. 27, 2024) (affirming a sentence of 210 days in jail with an opportunity to purge the remaining 180 days after he had served 30 by complying with the terms of the divorce decree for one year).

Here, we find that it is unclear from the ruling which and how many instances of contempt the court is punishing. Thus, on remand, we conditionally annul the writ and direct the court to clarify how many findings of contempt it is basing its sentence on and which violations are the basis for each sentence. The court should do so for each instance proven beyond a reasonable doubt. If the contingent jail sentence and the modification of visitation to compensate for lost

visitation time are for separate findings of contempt, then the sentence is affirmed. Otherwise, the sentence is vacated and remanded for resentencing on each separate contempt finding, with only a jail sentence or compensation for lost visitation time as the sentence for each instance, but not both.

### III. Modification of Visitation

The second part of Hesse's claims stem from her appeal of right of the modification of the visitation provision in the divorce decree. Our review of a modification is de novo. *In re Marriage of Brown*, 778 N.W.2d 47, 50 (Iowa Ct. App. 2009); *see also* Iowa R. App. P. 6.907. "While we are not bound by the fact-findings of the district court, we give them weight, especially as to credibility determinations." *Thorpe v. Hostetler*, 949 N.W.2d 1, 4 (Iowa Ct. App. 2020); *accord Thurman v. Shuey*, No. 21-1829, 2022 WL 3906794, at *3 (Iowa Ct. App. Aug. 31, 2022). This is so because "we recognize that the district court was able to listen to and observe the parties and witnesses." *McKee v. Dicus*, 785 N.W.2d 733, 736 (Iowa Ct. App. 2010). Our primary consideration in reviewing the modification of a visitation provision is the best interest of the child. *In re Marriage of Hoffman*, 867 N.W.2d 26, 33 (Iowa 2015).

"We recognize the importance of a child maintaining meaningful relationships and substantial contact with both parents" in determining visitation. *Connell v. Barker*, No. 22-1791, 2023 WL 4759458, at *3 (Iowa Ct. App. July 26, 2023). However, as compared with a modification of physical placement, "a much less extensive change in circumstances is generally required in visitation cases." *In re Marriage of Salmon*, 519 N.W.2d 94, 96 (Iowa Ct. App. 1994). A parent seeking to modify visitation must only establish "there has been a material

change in circumstances since the decree and that the requested change in visitation is in the best interests of the children." *Id.* at 95–96. One parent's disparagement of another and interference with their ability to visit the child can be a material change in circumstances. *See In re Marriage of Jones*, No. 21-0272, 2022 WL 244470, at *3 (Iowa Ct. App. Jan. 27, 2022) (relying on "post-decree hostilities towards" one parent along with the other parent's use of derogatory terms as justification for modifying visitation); *In re Marriage of McKeon*, No. 02-0185, 2002 WL 31425421, at *2 (Iowa Ct. App. Oct. 30, 2002) (find that inability "to cooperate or communicate regarding visitation in a way envisioned in the decree" constituted a material change in circumstances).

Here, we note from the outset that the award of visitation to VanZuiden has increased by two weeks each summer, but the award of visitation every other weekend remains unchanged from the original decree. And from that perspective we find, like the district court, a material change in circumstances justified a modification of the visitation schedule. While the parties may have at one time collaborated successfully to coordinate summer visitation, their communication has deteriorated to a point requiring modification, and the modification was in A.V.'s best interests. In the text messages and videos received by the district court, the parties repeatedly disparage each other, and do so with A.V. in the middle. They have not successfully navigated coordinating visitation, and for that reason, it is in A.V.'s best interests to clarify the exact parameters of summer visitation. We affirm the order modifying visitation.

**WRIT ANULLED IN PART, GRANTED IN PART, AND REMANDED WITH DIRECTIONS; MODIFICATION AFFIRMED.**