**IN THE COURT OF APPEALS OF IOWA**

No. 24-1258
Filed October 16, 2024

**IN THE INTEREST OF D.C., T.C., T.C., T.C., and T.J.,**
**Minor Children,**

**D.C., Mother,**
  Appellant.

_____

Appeal from the Iowa District Court for Wayne County, Patrick W. Greenwood and Monty Franklin, Judges.

A mother appeals the adjudication of her four sons and one daughter as children in need of assistance, their continued removal, and the State's reasonable efforts at reunification. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Julie De Vries of De Vries Law Office, PLC, Centerville, for appellant mother.

Brenna Bird, Attorney General, and Michelle R. Becker, Assistant Attorney General, for appellee State.

Dusty Clements of Clements Law & Mediation, Newton, attorney and guardian ad litem for minor children.

Considered by Tabor, C.J., and Chicchelly and Sandy, JJ.

**TABOR, Chief Judge.**

This case involves five children—ages five, ten, eleven, thirteen, and sixteen. The juvenile court ordered their removal from the mother's custody, citing domestic violence and substance use. The mother, Destiny, appeals their adjudication as children in need of assistance (CINA), their continued removal from her custody, and the out-of-state placement of the oldest child. She also contends the State has not made reasonable efforts toward reunification. Finally, she asserts that returning her four sons and one daughter to her custody is in their best interests. Because the State did not offer clear and convincing evidence to support adjudication on two of three grounds, we reverse in part and affirm in part.

## I.      Facts and Prior Proceedings

Kenny is the father of the four youngest children. Matthew is the father of the oldest child, T.J. All five children were living with Kenny and Destiny in October 2023, when he assaulted her in their presence. In November, the State petitioned for the court to adjudicate D.C., T.C., T.C., T.C., and T.J. as CINA. The family then started voluntary services through the Iowa Department of Health and Human Services. The children stayed with their mother. After two continuances requested by the State, the juvenile court set an adjudication hearing for April 2024.

Before that hearing occurred, the State applied for an emergency order to remove the children from Destiny's custody. The application notified the court that then fifteen-year-old T.J. took his mother's truck and drove to Missouri, where his

father lived.[1]  The application also detailed the department's request that Destiny submit to a drug test on April 8.  The mother declared on April 9 that she would not drug test before talking to the county attorney.  That same day, she pulled her children out of school, telling the staff that she planned to start home schooling.  Also on April 9, the court approved the children's temporary removal.  When Destiny did submit to a "rapid saliva" test administered by a juvenile court officer on April 10, the results were positive for amphetamine and methamphetamine.  The department placed the children with Destiny's sister.

Two days later, the children's guardian ad litem (GAL) submitted a report to the court expressing her "serious concerns about the mother's substance abuse and mental health issues and her dishonesty with [the department]."  The department caseworker and Destiny testified at the April 12 hearing.  The case manager testified that the children were referred for counseling, but the mother had not taken them since January.  Yet the mother had informed the department that they were attending counseling.

In her testimony, Destiny could not answer whether they had missed two months of counseling.  But she did request services for herself and T.J., who has a history of mental-health issues.  She also asked that the children be returned to her custody.  Short of that, she testified that she would be willing to live with an approved relative who could help supervise the children.  And she denied using methamphetamine.

---

[1] Destiny later testified that T.J. was acting out "typical teenage" rebellion when he refused to do chores and reacted to her threat to take away his Xbox by pushing her through two doorways and driving off in her truck.

On April 16 the court granted the State's request to adjudicate the children as CINA under Iowa Code sections 232.96A(2), 232.96A(3)(b), and 232.96A(14) (2024). The court also continued their out-of-home placements—T.J. with his paternal grandparents in Missouri and the four younger children with their maternal aunt in Iowa.

Ten days later, the mother filed a "motion for reasonable efforts" under Iowa Code section 232.102A. She asked for more "face-to-face interactions with her children supervised by family members." Beyond that, she requested "approval of living with the children and a relative in order to eliminate the continued removal of the children." Finally, she asked for T.J. to be returned to Iowa pending a home study of his relatives in Missouri under the Interstate Compact on the Placement of Children (ICPC). The court set her reasonable-efforts motion for consideration at the dispositional hearing on May 13.

At that hearing, Destiny acknowledged that she tested positive for methamphetamine on April 10 and again on May 10. After learning about her recent positive test, the court rejected Destiny's reasonable-efforts motion: "To be honest, in other cases, where the parents are actively using methamphetamine, they are getting a lot less visitation than [Destiny] is . . . getting at this point, so I think she's getting the maximum that should be allowed a parent when the parent is testing positive for methamphetamine." The court also required professionally supervised visitation. Finally, the court declined to order T.J. be returned to Iowa pending the ICPC, finding that he was a "temporary resident" of Missouri after he "placed himself" there.

After another dispositional hearing in July, the court continued the CINA status and found that it remained contrary to the children's welfare to return them to the mother's custody. Destiny appeals that dispositional order and other adverse rulings in the adjudication order from April 16 and the reasonable-efforts order from May 14.[2]

## II.    Scope and Standard of Review

The State must prove its CINA allegations by clear and convincing evidence. Iowa Code § 232.96(2). And we review the CINA proceedings de novo. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). That review allows us to assess the facts and the law and "adjudicate rights anew." *In re D.D.*, 955 N.W.2d 186, 192 (Iowa 2021) (citation omitted). We are not bound by the trial court's fact findings; but we give them weight. *Id.* "Our primary concern is the children's best interests." *J.S.*, 846 N.W.2d at 40.

## III.    Analysis

The mother raises five issues in her appeal. We will follow that same organizational structure in our analysis.

### A. Did substantial evidence support the removal findings in the adjudication order and were reasonable efforts made to prevent removal?

Destiny does not challenge the court's April 9 order for temporary removal under Iowa Code section 232.78. But she does contest the removal findings in the court's April 16 CINA adjudication order. *See* Iowa Code § 232.95(2)(c). At issue is the court's determination that continuation of the children in the mother's home

---

[2] Kenny did not appeal the orders.

would be contrary to their welfare and that the State made reasonable efforts to prevent or eliminate the need for removal. *See id.* § 232.95(6). The court also found substantial evidence of the need for removal because an imminent risk to the children's life or health outweighed the potential harm of removal, including the physical, emotional, social, or mental trauma the removal may cause. *Id.*

In her petition on appeal, Destiny emphasizes that at the CINA hearing, she requested "options for supervision, including living with relatives or supervision by relatives at her home." Although the mother's counsel lacked access to a transcript when drafting her petition, she asserted that it would likely show that Destiny wanted the children's aunt to testify about her willingness to supervise interactions. But the aunt could not testify because she was minding the children in the courthouse hallway. Indeed, the transcript reflected the court's finding that it was not in the children's best interests to be in the courtroom. The court also rejected an offer by a security officer to watch the children during the aunt's proposed testimony.[3] Destiny urges that the court's rulings "eliminated a potential reasonable effort of relative supervision to prevent removal."

In its response, the State contends that Destiny's challenge to the children's removal is moot. True, our case law advises that "[w]e cannot go back in time and restore custody based on alleged errors in the initial removal order." *See In re A.M.H.*, 516 N.W.2d 867, 871 (Iowa 1994). But on these facts, we choose to apply the public interest exception to the mootness doctrine. *See Christensen v. Iowa*

---

[3] The court did tell Destiny that it did not "want to cut off [her] chance to call the witness." But the mother's counsel rested after the department rejected a proposal for "an alternative to supervision."

*Dist. Ct.,* 578 N.W.2d 675, 679 (Iowa 1998) (deciding issue when judgment would have no practical effect when matter is of public importance and the problem is likely to recur).[4]  Providing such guidance on appeal ensures that the State made reasonable efforts to prevent the children's removal, as it is required to do under Iowa Code section 232.96(10)(a).

At the adjudication hearing, the mother's counsel explored possible alternatives to removal, asking the caseworker: "Is there any reason that Destiny couldn't move in with the children and their aunt?"  The worker did not believe that arrangement would be appropriate given Destiny's recent positive drug test.  And the worker had not considered the possibility of a family member moving in with Destiny and the children.  But the worker agreed that Destiny did not pose an imminent risk to her children on the day of the hearing.  In her testimony, Destiny expressed her willingness to live with a family member, who would supervise her interactions with the children.  Destiny also discussed signs of trauma that she had seen in her younger children when they were notified that they might be removed from her custody.

Against that backdrop, the aunt's testimony would likely have aided the court's decision whether the children's continued removal was necessary.  The aunt had been caring for the four youngest siblings since they were removed from parental custody and could have addressed her ability to supervise their interactions with Destiny.

---

[4] Courts may apply this exception to the mootness doctrine without prompting from the parties.  *Neer v. State*, No. 10-0966, 2011 WL 662725, at *2 (Iowa Ct. App. Feb. 23, 2011).

Juvenile courts must consider the harms that occur when children are taken from their parents. "Substantial evidence supports the notion that children suffer considerable trauma when they are separated from their parents. Indeed, studies show—and some courts have agreed—that the damage caused by removal from one's parent may be more damaging to the child than doing nothing at all." Shanta Trivedi, *The Harm of Child Removal*, 43 N.Y.U. Rev. L. & Soc. Change 523, 527–28 (2019) (cleaned up).

Recognizing the potential for harm, the legislature recently mandated that orders authorizing removal include this balancing test:

> [T]he court has found that substantial evidence exists to demonstrate that the need for removal due to an imminent risk to the child's life or health is greater than the potential harm including but not limited to any physical, emotional, social, or mental trauma the removal may cause the child. . . .

Iowa Code § 232.96(10)(a).

That removal statute also provides: "The grounds for each determination must be explicitly documented and stated in the court order." *Id.* The district court made a removal finding in its adjudication order but included little detail. The court simply pointed to Destiny's "very recent positive methamphetamine test" as a "clear and present danger" to the children.

Destiny seizes on the lack of explanation for the court's order, arguing that "[b]ecause substantial evidence did not support removal and reasonable efforts were not exhausted to prevent removal, the children should be returned to [her]." We agree that more explicit documentation would have assisted our review of the court's decision that the need for removal was greater than the potential harm of separating the children from their mother. Yet we decline to adopt the mother's

remedy. In our de novo review, we credit the mother's testimony that the threat of removal weighed heavily on her younger children. The record shows that they were upset and refused to go to school. But on the other side of the fulcrum, the mother's unaddressed methamphetamine use loomed large. The GAL visited the mother's home and expressed serious concerns about her substance use and mental health. Given these circumstances, removal was necessary to ensure the safety of the children, and that need outweighed the potential harm of removal.

### B. Did clear and convincing evidence support the grounds for adjudication?

The court relied on three grounds for adjudication: (1) section 232.96A(2) (the parent has physically abused or neglected the children, or is imminently likely to physically abuse or neglect the children);[5] (2) section 232.96A(3)(b) (the children have suffered or are imminently likely to suffer harmful effects because of the parent's failure to exercise a reasonable degree of care in supervising them); and (3) section 232.96A(14) (the parent "suffers from a mental incapacity, a mental condition, imprisonment, or drug or alcohol abuse that results in the [children] not receiving adequate care or being imminently likely not to receive adequate care").

In her petition on appeal, Destiny argues that the State proved none of those grounds by clear and convincing evidence. She asserts that the evidence did not show that she abused or neglected the children or put them at risk of harm. She

---

[5] "Neglect" means

> the failure on the part of a person responsible for the care of a child to provide for adequate food, shelter, clothing, medical or mental health treatment, supervision, or other care necessary for the child's health and welfare when financially able to do so or when offered financial or other reasonable means to do so.

Iowa Code § 232.2(40).

also disputes concerns for her mental health or substance use. She notes that the State's evidence "appeared to center around one drug test" and her behavior as reported by T.J. to Missouri authorities.

In its response, the State defends all three grounds for adjudication. But for section 232.96A(2), the State cites only an incident report from law enforcement in Missouri—offered as an exhibit at the adjudication hearing. When interviewed by Missouri deputies after taking off in his mother's truck, T.J. described troubles at home. He said his mother had been "acting strange" for about a year. He described her as making "irrational decisions," displaying "rapidly changing emotions," and leaving the children unattended at times. He asserted that Destiny spent "most of her time in the garage" away from all the children. He also said there was "limited food" in their home and that he ate mostly junk food and macaroni and cheese. While its exhibit contained concerning information, the State offered nothing to verify the teenager's allegations. T.J. attended the adjudication hearing, but the GAL did not want him to testify. The GAL shared T.J.'s views with the district court, but the court ruled that "because there's no cross-examination afforded to any party, [it would] put no weight in those hearsay comments."

We do not find that Missouri incident report, standing alone, proved that the mother had neglected her children or was imminently likely to neglect them. "CINA determinations must be based upon clear and convincing evidence." *J.S.*, 846 N.W.2d at 41 (citing Iowa Code § 232.96(2)). That standard is the most demanding applied in civil cases and means that there are "no serious or substantial doubts as to the correctness or conclusions of law drawn from the

evidence." *In re Guardianship of L.Y.*, 968 N.W.2d 882, 898 (Iowa 2022) (citation omitted). These second-hand statements from a teenager who had just commandeered his mother's truck are not reliable enough to meet that exacting standard. We reverse the adjudication on that ground.

To support the court's finding under section 232.96A(3)(b), the State again cites T.J.'s report of Destiny's lack of supervision and adds Kenny's domestic abuse assault against Destiny. For the same reasons discussed above, we do not find that T.J.'s allegations are enough to carry the State's burden. And we are not convinced that Destiny's role as the victim in that incident supports the finding that she failed to exercise a reasonable degree of care in supervising the children. We also reverse on that ground as to Destiny.

The remaining ground is section 232.96A(14). As the State notes, Destiny makes only a cursory mention of this ground. The State then contends that Destiny's avoidance of drug testing—followed by two positive tests over two months—provided sufficient proof that her methamphetamine use would likely result in the children not receiving adequate care. We agree with the State and affirm on this ground. We have held that "[a] parent's methamphetamine use, in itself, creates a dangerous environment for children." *In re J.P.*, No. 19-1633, 2020 WL 110425, at *2 (Iowa Ct. App. Jan. 9, 2020).

### C. Did the State make reasonable efforts to prevent continued removal of the children or to aid in reunification with the mother?

Destiny next argues that the State did not make reasonable efforts aimed at reunification under Iowa Code section 232.102A(1)(a). She claims the department should have allowed the children to stay in her home under the

supervision of family members or that she should have been allowed to live with them in a family member's home. She faults the juvenile court for finding that the State made reasonable efforts to reunify the family.

In determining whether the State has made reasonable efforts, the court considers the "type, duration, and intensity of services or support offered or provided" to the children and their family. Iowa Code § 232.102A(1)(a)(1). After assessing Destiny's motion for reasonable efforts, the juvenile court found that the State satisfied its duty by offering professionally supervised visitation for the parents, family-centered services, and sibling visitation. The court also noted that the department had made recommendations for substance-use and mental-health evaluations and treatment. The court concluded that it was not in the children's best interests to allow family members to supervise visitations for the mother given her recent positive test for methamphetamine.

The court's reluctance to allow family members to supervise visitation aligned with the view of the department's caseworker. The worker testified that Destiny acted erratically at the testing center when she returned a positive result. And the children's aunt, unlike the service providers, did not have professional training "to supervise an individual who could potentially be under the influence of an illegal substance." But the worker acknowledged that the department had not checked whether the aunt would be available for that kind of training.

While the department could have done more to facilitate family interactions, we cannot say that its efforts were not reasonable under these circumstances. The reasonable efforts concept includes visitation arrangements aimed at expediting reunification "while protecting the child[ren] from the harm responsible for the

removal." *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996). But we don't view visitation in a vacuum. *Id.* The juvenile court was justified in its concern that the mother's active methamphetamine use required professional supervision during visitation with her children. We affirm the finding of reasonable efforts.

### D. Did the juvenile court err in approving an out-of-state placement for T.J. without a home study?

Since he left his mother's home, T.J. was living with his paternal grandparents in Missouri. Destiny asked that he be returned to Iowa pending a home study of their residence. The juvenile court declined her request, reasoning that the teenager had "placed himself" in that home. She now argues that T.J.'s continued placement in Missouri violated Iowa Code section 232.158.

Our record shows that by the July 8 disposition hearing, the department had received "verbal confirmation from the Missouri child protective worker that they did complete the ICPC" and the grandparents' home would be approved. Given those developments, the State argues that the home study issue is moot.[6] *See A.M.H.*, 516 N.W.2d at 871. We agree that any error in the court's orders concerning T.J.'s placement in Missouri is no longer a viable controversy.

### E. Is reunification with their mother in the children's best interests?

Finally, Destiny argues that returning the children to her custody would be in their best interests. She asserts that she has had "appropriate interactions with her children" since their removal. She also contends that delaying reunification will "only cause hardship to the children, and time out of the home has damaged the

---

[6] The State also argues that Destiny did not preserve error on this issue. Because we decide this issue on mootness, we need not resolve the error-preservation challenge.

security and bonding" with her. The State counters that "Destiny has failed to demonstrate the necessary changes in her beliefs and behavior that allow her children to be reunified with her."

As of the July 2024 disposition order, the goal of this CINA case remained reunification with the parents. Like the juvenile court, we find that the mother has more work to do by continuing to engage in substance-use treatment and mental-health therapy. Until she achieves more progress toward sobriety and stability, we cannot find that reunification is in the children's best interests. *See In re J.E.,* 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (explaining that the children's safety and their need for a permanent home are the "defining elements" in determining best interests).

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**